**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**SARA LINDSEY BURCH,**

                              **Plaintiff,**

                v.                                        1:13-CV-155
                                                                       (FJS)

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

_____

**APPEARANCES**                                      **OF COUNSEL**

**OFFICE OF STEPHEN J. MASTAITIS, JR.**    **STEPHEN J. MASTAITIS, JR., ESQ.**
1412 Route 9P
Saratoga Springs, New York 12866
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**      **KATRINA M. LEDERER, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza   Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Sara Lindsey Burch brought this action pursuant to the Social Security Act (the "Act"), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for Child's Insurance Benefits based on disability and Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

Pending before the Court are the parties' cross-motions for judgment on the pleadings. *See*

Dkt. Nos. 11, 12.

## II. BACKGROUND

Plaintiff was born on June 3, 1993. Plaintiff completed 11th grade and, as of April 23, 2012, was expected to receive an Individualized Education Plan ("IEP") diploma. Plaintiff is able to communicate in English but has no work history. Generally, Plaintiff's alleged disability consists of borderline intellectual function, obesity, high blood pressure, thyroid impairment, and respiratory impairments. Her alleged disability onset date is June 3, 1993.

On April 18, 2011, Plaintiff applied for Child's Insurance Benefits. Subsequently, on June 1, 2011, she applied for Supplemental Security Income ("SSI"). The Social Security Administration initially denied both applications on September 16, 2011, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Robert Wright held a hearing in Albany, New York, on March 9, 2012. Attorney John Bernhard represented Plaintiff, who appeared and testified. *See* Dkt. No. 9-1, Administrative Record ("AR") at 13.[1] Esperanza Distefano, an impartial vocation expert ("VE"), also testified, *see id.*, as did Plaintiff's father.

The ALJ considered the case *de novo* and issued a written decision denying Plaintiff's application on April 23, 2012. *See id.* at 13-22. In his decision, the ALJ stated that he had carefully considered the entire record and made the following findings:

> (1) Born on June 3, 1993, Plaintiff had not attained age 22 as of June 3, 1993, the alleged onset date, and was 18 years old within 2 days of the application date, *see id.* at 15 (citing 20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

---

[1] References to the page numbers in the Administrative Record are to the Bate-stamp number appearing in the upper right corner of each page.

(2) Plaintiff had not engaged in substantial gainful activity ("SGA") since June 3, 1993, the alleged onset date, *see id.* (citing 20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) Plaintiff had the following severe impairments: borderline intellectual function, obesity and respiratory impairments, *see id.* (citing 20 CFR 404.1520(c) and 416.920(c)).

(4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, *see id.* at 17 (citing 20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: (a) limited to unskilled work that requires only a fourth-grade reading level, (b) in a clean air environment, meaning air such as might be found in an office or shopping mall, without fumes or respiratory irritants, and (c) with no contact with the public, *see id.* at 19.

(6) Plaintiff had no past relevant work, *see id.* at 21 (citing 20 CFR 404.1565 and 416.965).

(7) Plaintiff was born on June 3, 1993, and was 0 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date and was 18 years old within 2 days of her SSI application date, *see id.* (citing 20 CFR 404.1563 and 416.963).

(8) Plaintiff had an 11th grade education, was expected to receive an IEP diploma at the end of 2012, and was able to communicate in English, *see id.* (citing 20 CFR 404.1564 and 416.964).

(9) Transferability of job skills was not an issue because Plaintiff did not have past relevant work, *see id.* (citing 20 CFR 404.1568 and 416.968).

(10) Considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, *see id.* (citing 20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

> (11) Plaintiff had not been under a disability, as defined in the Social
> Security Act, from June 3, 1993, through the date of the ALJ's
> decision, April 23, 2012, *see id.* at 22 (citing 20 CFR 404.350(a)(5),
> 404.1520(g) and 416.920(g)).

On December 15, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. *See id.* at 4-6.

Plaintiff commenced this action on February 11, 2013, *see* Dkt. No. 1, and filed a supporting brief on July 11, 2013, *see* Dkt. No. 11. Defendant filed a responsive brief on August 15, 2013. *See* Dkt. No. 12.

### III. DISCUSSION

**A.   Standard of review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence in the record to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

To be eligible for SSI, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has or can be expected to last for a period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> (1) The ALJ first determines whether the claimant is engaged in SGA. *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
> (2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id.*
>
> (3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
> (4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, she is not disabled. *See* 20 C.F.R. § 416.920(f).
>
> (5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, she is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive disability benefits if she cannot perform any alternative gainful activity. *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation omitted).

**B.    Plaintiff's obesity**

When analyzing a claimant's obesity, an ALJ should rely on SSR 02-1p, which explains the process for assessing a claimant's obesity at steps two through five of the sequential evaluation process. *See* SSR 02-1p, 2002 WL 31026506 (Sept. 12, 2002). At step two, the ALJ should find obesity severe, alone or in combination with other medically determinable impairments if "it

significantly limits an individual's physical or mental abilities to do basic work activities." *Id.* at ¶ 6. At step three, SSR 02-1p provides that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of . . . respiratory . . . impairments." *Id.* at ¶ 7. At steps four and five, the ALJ "will consider any functional limitations resulting from the obesity in the RFC assessment." *Id.* at ¶ 9. However, the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments . . . . [but] will evaluate each case based on the information in the case record." *Id.* at ¶ 7.

SSR 02-1p notwithstanding, an ALJ is not required to single out a claimant's obesity for discussion in all cases. *See Yablonski v. Comm'r of Soc. Sec.*, No. 6:03-CV-414, 2008 WL 2157129, *6 (N.D.N.Y. Jan. 31, 2008) (citing *Cruz v. Barnhart*, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006) (citing *Guadalupe v. Barnhart*, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005))), report and recommendation adopted, 2008 WL 2157128 (N.D.N.Y. May 20, 2008). Furthermore,

> "[t]hose circuits which have recently commented on this complaint [that the ALJ did not explicitly consider the claimant's obesity] have held that an ALJ's failure to explicitly address a claimant's obesity does not warrant remand . . . . When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions."

*Yablonski*, 2008 WL 2157129, at *6 (quoting *Guadalupe v. Barnhart*, 2005 WL 2033380, at *6 (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) & *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004))) (other citation omitted); *see also Martin v. Astrue*, No. 5:05-CV-72, 2008 WL 4186339, *3-*4 (N.D.N.Y. Sept. 9, 2008), *aff'd*, 337 F. App'x 87 (2d Cir. 2009).

In this case, the ALJ found that Plaintiff's obesity was a severe impairment. *See* AR at 15. Specifically, the ALJ noted that Plaintiff "had been diagnosed with, and treated for asthma, which

has been complicated by her obesity." *See id.* at 16. In his RFC determination, the ALJ concluded that Plaintiff was limited to work in a clean air environment without fumes or respiratory irritants. *See id.* at 19. Furthermore, the ALJ concluded that Plaintiff's obesity by itself, or in combination with its effects on Plaintiff's respiratory impairment, was not sufficient to meet any impairment listed in the Social Security regulations. *See id.* at 17. The ALJ also noted that, even considering Plaintiff's obesity, Plaintiff's respiratory problems were not sufficient to satisfy a respiratory impairment as there was no evidence of sufficient abnormal test findings, hospitalization, or urgent care intervention. *See id.* at 17.

In addition, Plaintiff's medical records do not establish any work-related limitations associated with her obesity. Consultative examiner Dr. Paolano noted that Plaintiff had reported that she did not believe she had any physical limitations. *See* AR at 207. Dr. Paolano's physical examination notes did not indicate any significant physical limitations. *See id.* at 208. Although Dr. Meyer and special education teacher Jenni Palerno opined that Plaintiff had limited mobility due to obesity and asthma, Plaintiff's own testimony supports a finding that her obesity did not limit her mobility. *See id.* at 86, 103; *see also* Dkt. No. 9-2 at 280-84. Plaintiff testified that her asthma did not bother her often and that she only had issues with asthma when she walked far distances or ran. *See* Dkt. No. 9-2 at 283. Plaintiff further testified that she was able to perform a multitude of daily activities including laundry, washing dishes, caring for a pet dog and pet cat, preparing meals, dressing herself, riding a school bus, and attending gym class. *See id.* at 280-82.

For all these reason, the Court finds that the ALJ properly assessed Plaintiff's obesity as SSR 02-1p requires. The ALJ expressly addressed Plaintiff's obesity and found it severe. *See* AR at 15. In determining Plaintiff's RFC, the ALJ acknowledged that Plaintiff "had been diagnosed with, and

treated for asthma, which has been complicated by her obesity"; and, despite the fact that Dr. Paolano found no physical limitations or evidence of wheezing, the ALJ limited Plaintiff to working in a clean air environment without fumes or respiratory irritants. *See id.* at 19, 207-08. Given the ALJ's discussion of Plaintiff's obesity throughout his decision and the evidence in the record on which he relied, the Court concludes that there is substantial evidence in the record to support the ALJ's conclusions regarding Plaintiff's obesity and its effects on her ability to engage in SGA at all exertional levels within the limitations that he set.

**C.     The ALJ's RFC determination**

Residual functional capacity ("RFC") is "'what an individual can still do despite . . . her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . .'" *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2); *see also* SSR 96-8p, 1996 WL 374184, *2 (S.S.A. July 2, 1996). "'A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.'" *Balles v. Astrue*, No. 3:11-CV-1386, 2013 WL 252970, *2 (N.D.N.Y. Jan. 23, 2013) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, *2 (S.S.A. July 2, 1996))).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms. *See* 20 C.F.R. §§ 404.1545, 416.945; *Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984); *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). "A determination that a person can

work is predicated on a finding of residual functional capacity (RFC), which must be established by demonstrating substantial evidence [of] each of the criteria of the physical requirements in the regulations." *LaPorta v. Bowen*, 737 F. Supp. 180, 181 (N.D.N.Y. 1990) (citing *Benko v. Schweiker*, 551 F. Supp. 698, 705 (D.N.H. 1982)).

In this case, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: unskilled work that requires only a fourth-grade reading level; work in a clean air environment such as air that may be found in an office or shopping mall without fumes or respiratory irritants; and no contact with the public. *See* AR at 19.[2] Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling[.]" 20 C.F.R. § 404.1521(b); SSR 85-28, 1985 WL 56856, *3 (1985).

In support of his RFC determination, the ALJ noted that he afforded "great weight" to the opinions of consultative examining psychologist Seth Rigberg, Ph.D.; consultative non-examining review physician Jennifer Meyer, M.D.; speech and language pathologist Dawn Grasso-Megyeri, M.S., CCC-SLP; and consultative examining physician Albert Paolano, M.D. *See* AR at 20-21. The ALJ also afforded "greater consideration" to the opinion of certified school psychologist Bonnie Wieder. *See id.* at 21.

The ALJ's mental limitations in his RFC findings are consistent with Dr. Rigberg's and Dr. Meyer's examination notes and opinions. Dr. Rigberg examined Plaintiff in July 2011. *See id.* at 172. Dr. Rigberg noted, upon administration of a standardized achievement measure, that Plaintiff

---

[2] The Court notes that, in her submissions, Plaintiff asserts that the ALJ erred in finding that she could perform the full range of sustained light work activity. *See* Dkt. No. 11 at 8. This is an inaccurate statement of the ALJ's findings with respect to Plaintiff's RFC. *See* AR at 19.

had a word reading score of 70, the equivalent of a 3.8 grade level. *See id.* at 173. Dr. Rigberg opined that Plaintiff was able to follow and understand simple directions and instructions, could perform some simple tasks independently, would need supervision to perform some tasks, and was able to maintain attention and concentration for tasks. *See id.* at 174.

Consultative non-examining review physician Jennifer Meyer further opined that Plaintiff's learning disability was a medically determinable severe impairment. *See id.* at 200. Dr. Meyer noted that Plaintiff's teacher reported that Plaintiff was in a life-skills education program that was at a third to fifth grade level and that Plaintiff's WRAT-IV demonstrated a third grade reading level. *See id.* at 202.

In further support of the ALJ's mental RFC findings, speech pathologist Dawn Grasso-Megyeri observed that Plaintiff had mild articulation delay and receptive vocabulary delay but noted that Plaintiff's prognosis was fair. *See id.* at 21, 170. Similarly, certified school psychologist Bonnie Wieder found Plaintiff's range of functioning to be low average to below average and reported a Full Scale I.Q. score of 70. *See id.* at 228. Based on the opinions of Dr. Rigberg, Dr. Meyer, Therapist Grasso, and Psychologist Wieder, the ALJ limited Plaintiff to "unskilled work that requires only a fourth grade reading level." *See id.* at 19.

Furthermore, although the ALJ found Plaintiff capable of performing a full range of work at all exertional levels, he limited this work by including several non-exertional limitations. *See id.* In support of his findings, the ALJ noted that Plaintiff had told the state agency consultative examining physician, Albert Paolano, M.D., that she did not believe that she had any physical limitations. *See id.* at 20. The ALJ also gave great weight to the opinion of Dr. Paolano, who examined Plaintiff on September 7, 2011. *See id.* at 207. Dr. Paolano observed that Plaintiff rose from the seated position

with no difficulty and ambulated with a normal gait. *See id.* Dr. Paolano also noted that Plaintiff had full and clear breathing sounds with no wheezing. *See id.* His assessment of Plaintiff's extremities showed no signs of muscle atrophy or swelling, and her deep tendon reflexes and straight leg raises were all normal and symmetric. *See id.* Dr. Paolano further noted that Plaintiff had normal range of motion in all extremities. *See id.* Dr. Paolano's overall conclusion was that Plaintiff had no significant physical limitations. *See id.* Based on Dr. Paolano's examination notes and assessment, the ALJ determined that Plaintiff could perform a full range of work. *See id.* at 19.

Based on the foregoing, the Court finds that, in rendering his RFC determination, the ALJ properly considered objective medical facts, diagnoses and medical opinions based on such facts, and Plaintiff's subjective symptoms, including pain and descriptions of other limitations. *See* 20 C.F.R. §§ 404.1545, 416.945; *Martone*, 70 F. Supp. 2d at 150. Furthermore, the ALJ supported his RFC determination with a narrative discussion, describing specifically how the opinions of Dr. Rigberg, Dr. Meyer, Dr. Paolano, Ms. Grasso-Megyeri, and Ms. Wieder affected his RFC determination. *See* AR at 13-21; *Trail v. Astrue*, No. 5:09-CV-01120, 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A.)) (finding that "'[t]he RFC assessment must also include a narrative discussion, describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . .'").

For all these reasons, the Court finds that there is substantial evidence in the record to support the ALJ's RFC determination.

**D.    Plaintiff's credibility**

When assessing a claimant's credibility, the ALJ must consider both her medical records and

her reported symptoms. *See* 20 C.F.R. § 404.1529. A claimant's statements about her condition, on their own, are not enough to establish disability. *See id.*; SSR 96-7p, 1996 WL 374186, *1 (July 2, 1996). A claimant's complaint of pain and limitation is, however, "'entitled to great weight where . . . it is supported by objective medical evidence.'" *Futia v. Astrue*, No. 1:06-CV-0961, 2009 WL 425657, *6 (N.D.N.Y. Feb. 19, 2009) (quoting *Simmons v. U.S.R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992)).

If the medical evidence does not support a claimant's testimony, the ALJ employs a two-step process to evaluate the claimant's reported symptoms. *See* SSR 96-7p, at *2. First, the ALJ determines if the claimant has medically determinable impairments that could produce the alleged symptoms. *See* 20 C.F.R. § 404.1529(a); SSR 96-7p, at *2. Second, if impairments do exist, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms to determine the extent to which the symptoms limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c); SSR 96-7p, at *2. In so doing, the ALJ considers (1) claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve her pain or other symptoms; (5) other treatment the claimant receives or has received to relieve her pain or other symptoms; (6) any measures the claimant takes or has taken to relieve her pain or other symptoms; and (7) any other factors concerning the claimant's limitations and restrictions due to her pain or other symptoms. *See* 20 C.F.R. § 416.929(c)(3)(i)-(vii); SSR 96-7p, at *3.

Finally, "'[a]n [ALJ] may properly reject [a claimant's subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of

credibility, but must set forth his . . . reasons "with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence."" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, *5 (S.D.N.Y. March 25, 1999)).

In this case, the ALJ correctly applied the two-step process. The ALJ found that Plaintiff had the medically determinable severe impairments of borderline intellectual function, obesity, and respiratory impairments. *See* AR at 15-16. He also determined that these impairments could reasonably be expected to cause some of the limitations about which Plaintiff complained. *See id.* at 20. However, the ALJ concluded that Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they were not consistent with his RFC assessment. *See id.*

The ALJ explained that, with regard to Plaintiff's intellectual limitations, he found her testimony to be credible and consistent with the medical evidence. *See id.* However, he did not find her assessment of the effect of these limitations on her ability to maintain employment consistent with the vocational evidence and Social Security rules. *See id.*

Specifically, he found Plaintiff's contention that she was unable to work to be inconsistent with the vocational expert's testimony. *See id.* at 20. The ALJ noted, in this regard, that he did not think that Plaintiff was intentionally misrepresenting her situation. *See id.* However, he found that she underestimated her potential to perform work that existed in significant numbers in the national economy, despite her impairments. *See id.*

There is substantial evidence in the record to support the ALJ's conclusion with regard to Plaintiff's credibility. As the ALJ noted, Plaintiff testified at the hearing that she was in the 12th

grade, in special education classes and was attending a BOCES program. *See id.* at 20. She also testified that, on a given day, she got up around six or seven, dressed herself, ate breakfast, and went to her BOCES classes. *See id.* In addition, she stated that she did some cooking at home, enjoyed playing video games, did dishes, and did her own laundry. *See id.* She also stated that she went to the grocery store with someone else and cared for a pet dog and a pet cat. *See id.* Finally, with regard to Plaintiff's asthma, the ALJ noted that she had testified that her asthma affected her when there was a lot of pollen in the air and that she had not used her inhaler for approximately two months prior to the hearing. *See id.*

The ALJ also noted that, with regard to the opinion evidence, he had given great weight to the opinion of consultative examining psychologist Seth Rigberg, PhD as articulated in his July 26, 2011 examination report, significant weight to the opinion of consultative non-examining review physician Jennifer Meyer, M.D., as articulated in her June 17, 2011 opinion, and had given great weight to the opinion of speech and language pathologist Dawn Grasso-Megyeri, M.S., CCC-SLP, as articulated in her July 26, 2011 speech and language report. *See id.* at 20-21.

For all these reasons, the Court concludes that there is substantial evidence in the record to support the ALJ's conclusion regarding Plaintiff's credibility.

## IV. CONCLUSION

After reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: November 20, 2015
        Syracuse, New York

                                     Frederick J. Scullin, Jr.
                                     Senior United States District Judge

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: November 20, 2015
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge